MARC E. JOHNSON, Judge.
12Pefendants, the Parish of Jefferson (“the Parish”) and the Jefferson Parish Council (“the Council”), appeal the judgment of the trial court granting Plaintiffs, K.G.T. Holdings, LLC and Investment Holdings LLC (collectively “the Developers”), a permanent injunction, vacating the Council’s decision to deny the Developers’ request for resubdivision, and ordering the Council to grant the Developers’ revised request for subdivision. For the reasons that follow, we affirm.

FACTS & PROCEDURAL HISTORY

The Developers own a tract of property consisting of five lots, zoned R-1A for single family residential, in the Orleans Parkway Subdivision, bounded by Newman Ave., Rufin Place, Orleans Ave. and Central Ave., in Old Jefferson. Seeking to develop their property, the Developers demolished an old, abandoned, and dilapidated school and two vandalized residences on the property and submitted an application for resubdivision. In their application for resubdivision, the Developers sought approval for resubdividing the five-lot tract into 17 lots.
|3The Jefferson Parish Planning Department (“the Planning Department”) recommended denying the resubdivision request on the basis 13 of the proposed 17 lots, with inadequacies in the width, depth and area measurements, did not comply with the R-1A zoning requirements. The application was heard by the Jefferson Parish Planning Advisory Board (“PAB”) on September 26, 2013, which deferred a decision to allow the Developers to submit a revised proposal that met the R-1A requirements.
Thereafter, the Developers met with the Planning Department and neighbors to address concerns regarding the number of lots, the lot size, drainage, the existence of a “spite strip”, and emergency vehicle access. After discussing the matter with multiple Parish departments, the Developers submitted a revised plat plan proposal. The revised proposal reduced the number of lots to 16, added a 15-foot drainage servitude and a utility servitude, removed the spite strip and enlarged the hammerhead cul-de-sac to aid emergency vehicles. The Developers submitted two revised drawings: one in which all 16 of the proposed lots were compliant with the Jefferson Parish Code of Ordinances, and one in which 15 of the 16 proposed lots were compliant. In the second drawing, Lot 6-B1 failed to meet the 50-foot width requirement on the rear of the property, falling short by 2.5 feet.
The Planning Department reviewed the revised proposal and recommended approval of the plan in which 15 of the 16 lots complied with the zoning and code requirements. On October 24, 2013, a second hearing was held before the PAB, at which time the PAB unanimously approved the Developers’ revised plan for resubdivision, despite opposition by the neighbors.
The application for resubdivision was considered by the Council on January 15, 2014, at which time the Council denied the application on the basis the plans did not meet the neighborhood norm and the density was too intense. Thereafter, Lon Jan *631 uary 31, 2014, the Developers filed a petition for injunctive relief and appeal of the Council’s decision, claiming the Council’s decision was arbitrary and capricious because there was no factual support for its decision and its decision bore little relationship to public safety, health, comfort or general welfare so as to violate the Developers’ constitutional rights.
The trial court heard the matter on May 2, 2014, and rendered judgment on June 27, 2014, granting a permanent injunction in favor of the Developers and against the Council and vacating the Council’s January 15, 2014 decision that denied the Developers request for resubdivision. The judgment ordered the Council to grant the Developers’ revised request for resubdivision.
In its reasons for judgment, the trial court noted that the Council denied the request for resubdivision on the basis the proposal would overdevelop the neighborhood and that the lot sizes failed to meet the neighborhood norm. However, the trial court found that the evidence did not establish a neighborhood norm for the area. In so concluding, the trial court relied on the Planning Department’s subdivision report that stated the area at issue did not have a neighborhood norm and evidence that 170 lots in a four block radius of the proposed development did not comply with the lot size required for R-1A zoning. While the trial court acknowledged there was some opposition to the proposal by neighboring residents, it cited and relied on jurisprudence that states resubdivision requests should not be denied solely on the basis of objection voiced by neighboring residents. The trial court concluded that the Council’s decision to deny the Developers’ request to resubdi-vide the property bore so little relationship to public safety, health, or general welfare that it was arbitrary and capricious.
The Council and the Parish appeal from this judgment.

\rJSSUE

On appeal, Defendants argue that the trial court erred in finding the Council’s decision denying the Developers’ request for resubdivision to be arbitrary and capricious. Defendants contend the trial court erroneously shifted the burden to the Council to prove the validity of its decision rather than requiring the Developers to prove the Council’s choice had no rational basis.

DISCUSSION

The general authority for local government to regulate land use is conferred by La. Const. Art. 6, § 17, which provides in part:
Subject to uniform procedures established by law, a local governmental subdivision may (1) adopt regulations for land use, zoning, and historic preservation, which authority is declared to be a public purpose; (2) create commissions and districts to implement those regulations; (3) review decisions of any such commission; and (4) adopt standards for use, construction, demolition, and modification of areas and structures.
The approval of subdivision plats is .regulated by La. R.S. 33:101.1, which provides:
Except as otherwise provided in this Subpart, the act of approving or disapproving a subdivision plat is hereby declared a legislative function involving the exercise of legislative discretion by the planning commission, based upon data presented to it; provided that any subdivision ordinance enacted by the governing authority of a parish or municipality or the acts of the planning commission, or planning administrator shall be sub *632 ject to judicial review on the grounds of abuse of discretion, unreasonable exercise of police powers, an excessive use of the power herein granted, or denial of the right of due process. The right of judicial review of a subdivision ordinance shall not be limited by the foregoing, however, nothing contained in this Sub-part or in any subdivision ordinance adopted by a parish or municipality shall be construed as imposing upon such parish or municipality a duty, special or otherwise, to or for the benefit of any individual person or group of persons.
Land use is subject to the police power of various governing bodies, and the courts will not interfere with the decisions of these bodies unless it is clear that their action is without any relation to the public health, safety, or general welfare. | «Willow, Inc. v. Jefferson Parish Council, 05-754 (La.App. 5 Cir. 4/25/06); 928 So.2d 756, 759, writ denied, 06-1596 (La.9/29/06); 987 So.2d 869. In reviewing a land use decision, the issue is whether the governing body’s decision is arbitrary and capricious. Id. at 760, citing Palermo Land Co., Inc. v. Planning Commission of Calcasieu Parish, 561 So.2d 482, 492 (La.1990). The plaintiff bears the burden of proving that the governing authority acted arbitrarily. Willow, 928 So.2d at 760. To determine if the governing authority’s decision regarding a resubdivision request is valid, the trial court must ask whether the decision bears so little relationship to public safety, health, or general welfare as to render it arbitrary and capricious. Id.
The Jefferson Parish Code of Ordinances (JPCO), Section 38-2.26, sets forth the review process for proposed land uses within Jefferson Parish. Under Section 33-2.26(b), a preliminary plat must be approved for any major subdivision “to ensure that proposed divisions of land are consistent with adopted plans, policies, and regulations for land use, public facilities, and public services.” Section 33-2.26(b)(3) sets forth the following review criteria that shall be considered when reviewing a preliminary plat for approval:
a. Consistency with the comprehensive plan and other applicable planning documents;
b. Consistency with existing or proposed zoning of the property;
c. Existing or proposed availability of adequate facilities and services;
d. Suitability of the site for the proposed development;
e. Compatibility of development with existing and planned land use patterns;
f. Compatibility of the development with the neighborhood norm (as defined in this [Unified Development Code]);
g. Whether the proposed development is premature as evidenced by: the lack of adequate public facilities within a reasonable distance to the site; or extraordinary service delivery costs due to the remote location or poor access to the site;
h. Whether proposed lots and blocks are consistent with adopted design standards;
[i. Whether proposed rights-o'f-way and servitudes are adequate to serve the property and are consistent with adopted plans; and
j. Whether the traffic impacts from the proposed development can be adequately mitigated in accordance with a traffic impact analysis, if required; and
k. Whether the proposed development is consistent with an applicable concept plan approval.
In this case, the Council did not give reasons for its decision denying the re *633 quest for resubdivision. However, the parties stipulated that Councilman Paul Johnston, in whose district the subject property lays, stated at a neighborhood meeting to discuss the application for re-subdivision, “I am denying it. They’re shoving too much into too small an area. It’s just too intense, too much. There is a neighborhood norm. They need to meet the neighborhood norm. He can make his lots large and sell them for more money.”
Under JPCO, Section 33-6.8, the Council may consider the neighborhood norm in granting or denying a request for subdivision approval in order to maintain the stability and uniqueness of residential neighborhoods. Factors to consider in determining the neighborhood norm include: (1) the general purpose or intent of the original lot layout within the subdivision and within the immediate area of the subject property; (2) the predominant and average lot width, depth, and area (square footage) within the immediate area of the subject property; (3) the orientation of lots within the immediate area of the property; and (4) neighborhood stability relative to the frequency of re-subdivision of lots within the immediate area of the subject property. JPCO, Section 33-6.8.
The record fails to show that a neighborhood norm existed for the area at issue. The Planning Department issued a subdivision report prior to the Council hearing on the Developers’ application for resubdi-vision. In the report, the Planning Department went through each review criteria listed in JPSO, Section 33~182.26(b)(3), in relation to the Developers’ preliminary plat proposal and specifically noted that there was no neighborhood norm for the area.
Additionally, as noted by the trial court, the Developers presented evidence indicating that 170 lots in a four block radius of the property at issue do not comply with the 50' x 100' lot size required for R-1A zoning. In the Rufin Place development, immediately adjacent to the proposed re-subdivision, 11 of the 14 lots fail to conform with the zoning requirements with lot sizes ranging from 68.5' x 75' to 70' x 80'. And, in the area where the subject property is located, bounded by Newman Ave. and Central Ave., the Developers presented evidence showing that at least 45 lots have a front property line 50' or less. While there was evidence that a few lots exceeded the required 50' x 100' lot size, these lots were in the minority and, thus, did not establish that large lot sizes are the neighborhood norm in the area surrounding the proposed development.
On appeal, Defendants contend the Council’s decision to deny the application for resubdivision was based on considerations of aesthetic qualities and quality of life objections, namely lot size, raised by neighboring residents. Defendants maintain that these are valid considerations relating to the general welfare of the public and, thus, provided a rational basis for the Council’s decision to deny the resubdi-vision. As such, Defendants argue the Council’s decision could not be arbitrary and capricious.
Here, the Developers applied for approval of a resubdivision plan that complies, with the exception of one lot at the choice of the Planning Department, with all applicable zoning and use requirements. When “an owner seeks a use by right, in compliance with the applicable zoning, conforming to every modification imposed, and approved by the commission, [t]his use by right should be presumptively valid and approved.” Urban Housing of Am., Inc. v. City of Shreveport, 44,874 (La.App. 2 Cir. 10/28/09); 26 So.3d 226, 232, writ denied, 10-26 (La.4/23/10); 34 So.3d 269 (internal citations omitted). We agree with the Second Circuit that “[o]n judicial re *634 view, the council’s decision to deny a use by right is subject to strict scrutiny, not the normal standard of broad discretion applied to variance cases.” Id. Additionally, land use regulations are construed in favor of the owner’s proposed use of his own property. Id. at 232.
In Urban Housing of Am., Inc. v. City of Shreveport, supra, the landowners/developers appealed the decision of the Shreveport City Council that denied approval of its subdivision plan to build Phase 3 of a subdivision despite the fact the submitted subdivision plan met all zoning and use criteria. The district court affirmed the council’s decision, relying on jurisprudence that suggested the city had “virtually boundless discretion” in such matters. The developers appealed, arguing that the council had abused its discretion in denying the subdivision plan and had effectively denied them their use by right of their own property which complied with all applicable ordinances. The city maintained that the incompatibility of lot sizes with the surrounding residential properties, traffic congestion and circulation, and security concerns all provided a rational basis upon which to deny the subdivision proposal. The Second Circuit reversed the council and approved the developers’ proposed subdivision plan.
In its reasoning, the Second Circuit distinguished between land use plans in which an owner requests variances, special exceptions or rezoning from those plans in which an owner seeks a use by right in compliance with the applicable zoning requirements. The court explained that the former allows for broad legislative discretion while the latter subjects the city to a much higher burden that is subject to strict scrutiny upon judicial review. Urban Housing, 26 So.3d at 231.
hflln Urban Housing, supra, the court acknowledged that the lot and house size in the proposed plan were noticeably smaller than the nearby development, but noted the city zoned the property R-1D in obvious anticipation of smaller lots in close proximity to the larger lots on a nearby road. The court also acknowledged the validity of some security concerns. However, the court explained that while some of the reasons offered for denying the subdivision plan had factual support, the reasons did not meet the heightened burden of denying a fully compliant applicant.
Likewise, in the present case, we find the Council failed to meet the heightened burden of denying the Developers’ resubdivision plan so as to render its decision arbitrary and capricious. The Developers sought no variance and no re-zoning. It was the Planning Department that chose the Developers’ plan that had one deficient lot over the plan where all 16 lots were fully compliant. The one deficient lot was only two and a half feet short across the rear of the property; the remaining 15 lots were fully compliant and some even provided more width or depth than required. While there was some evidence regarding bigger lot sizes in the immediate area, these larger lot sizes were the minority and did not represent a neighborhood norm. In fact, the evidence presented showed many lots in the area did not comply with the zoning requirements, falling short of the required measurements.
Zoning regulations must be uniformly applied within each district or zone of the municipality. Jenkins v. St. Tammany Parish Police Jury, 98-2627 (La.7/2/99); 736 So.2d 1287, 1291. When applications are granted in similar situations and refused in others, the refusal to grant an application may constitute nonuniform application of zoning ordinances that is arbitrary and capricious. Papa v. City of Shreveport, 27,045 (La.App. 2 Cir. 9/29/95); 661 So.2d 1100, writ denied, *635 95—2544 (La.1/5/96); 666 So.2d 295. The record shows that property owners near the subject property had previously applied for and been granted a resubdivision: namely Rufin Place, which is adjacent to the subject property, and Ellen St. Although the lots in both resubdivisions did not fully comply with the zoning requirements, both resubdivision requests were approved.
The record does not provide a factual support for Defendants’ argument on appeal that the Council denied the Developers’ request based on concerns for the general welfare of the public relating to the lot size and the quality of life objections raised by residents as previously indicated. All but one of the 16 lots fully complied with zoning requirements. The one deficient lot was short two and a half feet across the rear of the property and, according to the Planning Department, was “not detrimental to the subdivision’s overall design or functionality.” The record shows that 170 lots in the surrounding area failed to comply with the zoning requirements.
Although some the neighbors voiced objection to the proposed resubdivision, there 'was no rezoning request and almost all of the Jefferson Parish Departments, including the Planning Department, Department of Public Works, Inspection and Code Enforcement — Site Plan, Eastbank Consolidated Fire Department, the Environmental Department and 911, did not oppose the proposal. Additionally, the Planning Department reviewed the proposed resubdivision in light of the review criteria set forth in the JPCO and recommended approval. Further, the resubdivision proposal was consistent with the Jefferson Parish Comprehensive Plan, which seeks to “support housing sites, designs and related amenities which make a positive, contribution to public space and neighborhood vitality.”
Accordingly, we find there was no rational basis for the Council’s decision [12to deny the Developers’ revised application for resubdivision and that the Council’s decision was arbitrary and capricious.

DECREE

For the reasons discussed above, we find the trial court properly applied the correct standard of review and did not err in finding the Council’s denial of the Developers’ request for resubdivision to be arbitrary and capricious. Accordingly, the trial court’s judgment granting a permanent injunction in favor of the Developers, vacating the Council’s January 15, 2014 decision denying the Developers’ request for resubdivision, and ordering the Council to approve the Developers’ revised proposal for resubdivision is affirmed.

AFFIRMED